## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|                                          |   |                       |
|------------------------------------------|---|-----------------------|
| **DARLENE HINSON et al.,**               | : |                       |
|                                          | : |                       |
| **Plaintiffs,**                          | : |                       |
|                                          | : |                       |
| **v.**                                   | : | **Civ. No. 07-0934(CKK)** |
|                                          | : |                       |
| **MERRIT EDUCATIONAL CENTER, et al.,**   | : |                       |
|                                          | : |                       |
| **Defendants.**                          | : |                       |

_____ :


## DEFENDANT DISTRICT OF COLUMBIA'S  MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT.

Pursuant to Fed. R. Civ. P 56, defendant District of Columbia, through undersigned counsel, hereby respectfully moves this honorable Court to grant summary judgment in its favor in the above captioned action, and to deny plaintiffs' motion for summary judgment. In the first instance, plaintiffs have failed to comply with Local Rules 7.1(h) and 56.1, which require that a party moving for summary judgment submit a Statement of Material Facts as to which there is No Genuine Dispute, and to support these facts with citations to the record**.**  Further, as illustrated by the administrative record, the accompanying supporting Memorandum, and the Statement Of Material Facts As To Which There Is No Genuine Dispute, the apparently challenged administrative determinations under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. § 1400 *et seq*., were entirely appropriate.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

March 3, 2008

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|                                               |   |                      |
|-----------------------------------------------|---|----------------------|
| DARLENE HINSON et al.,                        | : |                      |
|                                               | : |                      |
| Plaintiffs,                                   | : |                      |
|                                               | : |                      |
| v.                                            | : | Civ. No. 07-0934(CKK) |
|                                               | : |                      |
| MERRIT EDUCATIONAL CENTER, et al.,            | : |                      |
|                                               | : |                      |
| Defendants.                                   | : |                      |

---

**DEFENDANT DISTRICT OF COLUMBIA'S MEMORANDUM IN SUPPORT OF
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND
IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY
JUDGMENT**

**INTRODUCTION AND BACKGROUND**

On February 8, 2007, plaintiffs filed a Due Process Hearing Request alleging that

DCPS failed to develop an appropriate Individualized Educational Plan ("IEP") for the

student and failed to provide him with an appropriate educational placement. (R at 14-18)

A due process hearing was conducted pursuant to the Individuals With Disabilities

Education Improvement Act of 2004, 20 U.S.C. § 1400 *et seq*. ("IDEA") on April 12,

2007.  (R at 1) On April 25, 2007, the Hearing Officer ("HO") issued his decision finding

that the student's IEP was appropriate, that the parent participated in the placement

decision making process, and that the IEP was being implemented at Merrit Educational

Center, where the student was attending.  (R at 4-5)  The HO further concluded that a

preponderance of the evidence did not support the parent's contention that Merrit

Educational Center was an inappropriate placement.  (R at 5) Lastly, the HO noted that

the student had been absent from school for approximately 45 days, and thus was unavailable to obtain educational benefit. (R at 5)

This action seeks review of the administrative decision.

## ARGUMENT

### A.  The Standards of Review Applicable in This Case

#### 1.  The requirements for summary judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law." Farmland Industries, Inc. v. Grain Board of Iraq, 248 U.S. App. D.C.  276, 904 F. 2d 732, 735 (1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[1]

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

---

[1] Anderson v. Liberty Lobby, Inc, supra, 477 U.S. at 248, similarly describes the rule for determining materiality:

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. . . Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinning of those disputes.

[2] Celotex Corp. v. Cantrett, supra, is one of three cases decided by the U.S. Supreme Court in 1986 that govern the standard for granting motions for summary judgment.  Celotex Corp., supra;  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574 (1986). Celotex Corp. held that Rule 56 was to be administered with due regard to those opposing claims, as well as those advancing them, and that the purpose of the Rule was to dispose of claims that had no reasonable factual basis. 477 U.S. at 327, 323. Anderson held that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. 477 U.S. at 248, 254.  Matsushita held that where the record

To meet the initial burden of showing "the absence of a genuine issue of material fact" on an essential element of the non-movant's case, the movant may demonstrate that the respondent has no evidence to support an essential element of his or her case. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). In answer, the respondent must "present affirmative evidence" in order to defeat the motion, and "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion for summary judgment should be granted. Id.

**2. The criteria for review of administrative decisions under IDEIA**

IDEIA provides for judicial review in state or federal court to "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. 20 U.S.C. §1415(c). In conducting such review, the reviewing court "shall receive the records of the administrative proceeding, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. §1415(e). "**This does not mean, however, that the findings can be ignored. The court in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue**." *J.S. and T.S., parents of C.S. v. Shoreline School District*, 220 F. Supp. 2d 1175, 1183 (W.D. WA. 2002) (emphasis added). Thus, federal courts cannot ignore the administrative findings. **The "preponderance of the evidence" standard "is by no means an invitation to the**

---

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." 475 U.S. at 587.

> . . . [T]aken together, these three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials and lower courts have responded accordingly.

10 A. Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2727, n. 25 (1998).

court to substitute their own notions of sound educational policy for those of the school authorities which they review." Board of Education of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206 (1982) (emphasis added).

The party challenging the hearing officer's determination bears the burden of persuading the court that the Hearing Officer was incorrect. Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992); Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an independent determination, the Court "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons v. Smith, supra, 829 F.Supp. at 418.

Accordingly, before this Court may reverse the Hearing Officer's decision, the Plaintiffs must show by a "preponderance of the evidence," giving the Hearing Officer's finding "due weight," that the Hearing Officer was wrong.

**B.    Under the Applicable Standards, Dismissal of the Complaint Herein is Required.**

**1.    Plaintiffs Have Failed to Comply with the Requirements of LCvR 7.1(h) and 56.1.**

Local Rules 7.1(h) and 56.1 are "clear and explicit." Washington Bancorporation v. Said, 812 F. Supp. 1256, 1278 (D.D.C. 1993). They require that a party moving for summary judgment must submit a Statement of Material Facts as to which there is No Genuine Dispute and to **support these facts with citations to the record**. See LCvR 7.1(h) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which

shall include references to the parts of the record relied on to support the statement.");

LCvR 56.1 (same); *Robertson v. Am. Airlines, Inc.,* 239 F. Supp. 2d 5 (D.D.C. 2002).

In the instant case, Plaintiffs title a portion of their Memorandum in support of their motion for summary judgment as "Undisputed Fact." (Motion at 1) However, that portion is a mere reiteration of the unsubstantiated allegations contained in their Complaint without any reference to the administrative record and does nothing to assist the court to isolate the material facts, distinguish disputed from undisputed facts, or identify the pertinent parts of the record.

Accordingly, this Court should refuse to credit any of the facts that plaintiffs claim are not in dispute, if there is no reference to the record, thereby preventing an entry of summary judgment on their behalf. "The importance of filing a proper…statement is well established." Jackson v. Finnegan, Henderson, Farabow, Garrett, & Dunner, 101 F.3d 145, 151 (D.C. 1996) (citations omitted). It is meant to "assist[] the district court to maintain docket control and to decide motions for summary judgment sufficiently and effectively" (id. at 150), and to prevent it from having to "sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact," id. at 151 (citations omitted). It is the parties' responsibility and that of their counsel "to crystallize for the district court the material facts and the relevant portions of the record." Id. (emphasis added). Here, plaintiffs have not done so. Accordingly, their motion for summary judgment should be denied.

**2.  Plaintiffs' Summary Judgment Arguments Were Not Raised in Their Due
   Process Complaint or at the Due Process Hearing.**

Plaintiffs' main arguments in their Motion for Summary Judgment appear to be that

DCPS delayed in performing certain evaluations and in convening a multidisciplinary team

meeting ("MDT") after a settlement agreement had been reached between the parties.

(Motion at 1-2)  However, these were not issues raised in plaintiffs' Due Process Complaint

nor were they raised at the due process hearing.  To the extent that plaintiffs appear to

challenge a delay by DCPS to perform certain evaluations and/or to timely convene an

MDT meeting, the court cannot take up these issues as they were not presented before the

hearing officer.  See Shaw v. Dist. of Columbia,  238 F. Supp. 2d 127, 140 (D. D. C. 2002)

(citing Cox v. Jenkins, 878 F.2d 414, 420 (D.C. Cir. 1989)).  Absent "allegation[s] that an

attempt was made to raise these issues before the hearing officer [who] declined to consider

[them] and "absent a showing that exhaustion would be futile or inadequate, a party must

pursue all administrative avenues of redress under the IDEA before seeking judicial review

under the Act."  Id.  See also, Herbin v. Dist. Of Columbia, Civ. No. 02-1185,

Memorandum Opinion, March 29, 2005 at 19.

Here, the reasons outlined for Plaintiffs' Due Process Complaint, and the issues

addressed by the HO, were whether the student's IEP and placement were inappropriate.  (R

at 5, 17)[3]  Plaintiffs never contended at the due process hearing that the student was denied a

FAPE because of any delay in performing certain evaluations or in conducting an MDT

---

[3] Plaintiffs appear to acknowledge that DCPS' development of what they perceived was an inappropriate
IEP, was the reason they are appealing the HOD.  "On February 20, 2007, DCPS developed an IEP that
Plaintiffs believed were [sic] not tailored to meet N.H.'s educational and related service needs.  To seek relief
Plaintiff filed a due process hearing request.  The hearing officer denied the relief that Plaintiff sought.  Parent
files this appeal to the decision of the hearing officer dated April 25, 2007."  (Motion at 2)

meeting. Here, these issues are not properly before this Court, and plaintiffs' arguments concerning them must be stricken.

>    **3.     The student's 1/23/07 IEP was reasonably calculated to enable the student to receive educational benefits.**

The purpose of the IDEIA is to give children with disabilities a free appropriate public education ("FAPE") designed to meet their unique needs. 20 U.S.C. Sections 1401(25), 1412. As part of providing a FAPE, school districts receiving funds under the IDEIA are required to establish an Individualized Educational Program ("IEP") for each child with a disability. 20 U.S.C. Sec. 1414 (a) (5).

The IEP must "contain a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other services to be provided, and criteria for evaluating the child's progress." 20 U.S.C. Sec. 1401 (a) 20). The IEP developed must be reasonably calculated to enable the child to receive educational benefits. *Board of Education v. Rowley,* 458 U.S. 176, 206-07 (1982)

Those persons tasked with creating the IEP may include a regular education teacher, a special education teacher, a representative from the District of Columbia Public Schools ("DCPS") who is knowledgeable about the agency's special education resources and general education curriculum, a person with the expertise to interpret the student's evaluations, if any, and the parent (20 U.S.C. §1414(d)(1)(B)). The IEP developed must be reasonably calculated to enable the child to receive educational benefits. *Board of Education v. Rowley,* 458 U.S. 176, 206-07 (1982)

In the instant case, a Multi Disciplinary Team ("MDT") Meeting was convened on January 23, 2007, to determine the student's eligibility for special education. (R at

108-110)[4]  Present at the meeting were: the student, his mother, a special education and general education teacher, an occupational therapist, a social worker, a speech therapist, a psychologist and a representative from the Local Education Agency ("LEA").  The parent's attorney participated telephonically.  (R at 108)

In making its determination as to the type of services the student required, and where he should be placed, the MDT team reviewed a Neurological Report, a Psycho-Educational Evaluation, a Speech and Language Evaluation and an Occupational Therapy Evaluation.  (R at 108-110) The student's Neuropsychological Evaluation indicated that the student was functioning in the Average Range of intelligence, but that his cognitive abilities were not commensurate with his academic achievement skills, thus providing an indication of the presence of a learning disability.  (R at 53)

At the end of the meeting, the team determined that the student was eligible for special education services as an "other health impaired ("OHI")[5] student, and prepared an IEP which included a combination of general education and special education services.  The IEP provided for 15 hours per week of specialized instruction in reading, written language and math, as well as 30 minutes per week each for psychological counseling and speech therapy.  (R at 120)

The 1/23/07 IEP included a statement concerning the student's "present educational performance levels in areas affected by the disability", as well as scores where they were available.  (R at 112)  The statements included comments regarding the student's strengths in a particular area, as well as the impact his disability had on his educational performance. (R at 112)  The IEP also included annual goals, as well as short term objectives.  (R at 113-

---

[4] The student had been found previously ineligible for special education in 2004 and 2006.  (R at 123)
[5] The student has been documented as having ADHD.  (R. at 110)

117)  The student's progress was to be measured by monthly and quarterly reports.  (R at 113-117)

The IEP also described placement considerations and the justification for either accepting or rejecting a particular placement.  The team ultimately believed that the student would be served best with a combination of general and special education.  "[C]urrent documentation (and parent wishes) indicates that [the student] can asses the general education curriculum in the special education resource room."  (R at 106)  Taken into account in making this decision was the "mother's and student's wishes."  (R at 106)

The MDT team, including the student and his parent, agreed that Merrit Educational Center, the student's neighborhood school, would be an appropriate placement because it could provide the services stated on the IEP.  (R at 121)  The student's attorney was the only member of the MDT team who did not agree with the placement.  (R at 121, 122)  However, the parent stated that her son wanted to remain at Merrit, that the special resource room would have fewer students than the regular classroom, and that she believed that the student would be able to learn to control his impulsive behavior, the source of his educational problems, through the counseling the school would provide him and by her and the student attending outside family counseling.  The parent further stated that "if [the student] is placed at a different school his unacceptable behaviors will increase because he will not know anyone and he really wants to stay at Merrit."  (R at 121)

The MDT team further discussed whether or not the student was eligible for extended school year services ("ESY") and determined that he was not.  (R at 121)  "Missed services were discussed.  [They were] determined to not have caused goals/objectives to not be met.  N [the student] has an attendance issue outside of times he served suspension (with

manifestation determinations and hearing officer's determination) N's refusal to stay in class

impacted progress not denial of FAPE." (R at 122)

## **CONCLUSION**

For the reasons stated above, the HO correctly concluded that the student's IEP was

appropriate and that Merrit EC could adequately implement it. Accordingly, the HO's

decision that there was no denial of FAPE was correct and plaintiffs' Motion should be

denied and their Complaint dismissed.

Respectfully submitted,


PETER J. NICKLES
Interim Attorney General for the District of Columbia


GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

March 3, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DARLENE HINSON et al.,                              :

        Plaintiffs,                                    :

               v.                               :    **Civ. No. 07-0934(CKK)**

MERRIT EDUCATIONAL CENTER, et al.,                  :

        Defendants.                                   :

_____:


### DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    On February 8, 2007, plaintiffs filed a Due Process Hearing Request alleging that DCPS failed to develop an appropriate Individualized Educational Plan ("IEP") for the student and failed to provide him with an appropriate educational placement. (R at 14-18)

2.    The reasons provided in Plaintiffs' Due Process Complaint, and the issues addressed by the HO, were whether the student's IEP and placement were inappropriate.  (R at 5, 17)

3.    On April 25, 2007, the Hearing Officer ("HO") issued his decision finding that the student's IEP was appropriate, that the parent participated in the placement decision making process, that the IEP was being implemented at Merrit EC, where the student was attending, and the Merrit EC was an appropriate placement  (R at 4-5)

4.      The HO also noted that the student had been absent from school for approximately 45 days, and thus was unavailable to obtain educational benefit. (R at 5)

5.      A Multi Disciplinary Team ("MDT") Meeting was convened on January 23, 2007, to determine the student's eligibility for special education. (R at 108-110)

6.      Present at the meeting were: the student, his mother, a special education and general education teacher, an occupational therapist, a social worker, a speech therapist, a psychologist and a representative from the Local Education Agency ("LEA").  The parent's attorney participated telephonically.  (R at 108)

7.      In making its determination as to the type of services the student required, and where he should be placed, the MDT team reviewed a Neurological Report, a Psycho-Educational Evaluation, a Speech and Language Evaluation and an Occupational Therapy Evaluation.  (R at 108-110)

8.      The student's Neuropsychological Evaluation indicated that the student was functioning in the Average Range of intelligence, but that his cognitive abilities were not commensurate with his academic achievement skills, thus providing an indication of the presence of a learning disability. (R at 53)

9.      The MDT team determined that the student was eligible for special education services as an "other health impaired" ("OHI") student and prepared an IEP, which included a combination of general education and

14

special education services.  The IEP provided for 15 hours per week of specialized instruction in reading, written language and math, as well as 30 minutes per week each for psychological counseling and speech therapy.  (R at 120)

10.  The 1/23/07 IEP included a statement concerning the student's "present educational performance levels in areas affected by the disability", as well as scores where they were available.  (R at 112)  The statements included comments regarding the student's strengths in a particular area, as well as the impact his disability had on his educational performance.  (R at 112)  The IEP also included annual goals, as well as short term objectives.  (R at 113-117)  The student's progress was to be measured by monthly and quarterly reports. (R at 113-117)

11.  The IEP also described placement considerations and the justification for either accepting or rejecting a particular placement.  (R at 106)

12.  The MDT team believed that the student would be served best with a combination of general and special education. Taken into account in making this decision was the "mother's and student's wishes."  (R at 106)

13.  The MDT team, including the student and his parent, agreed that Merrit Educational Center, the student's neighborhood school, would be an appropriate placement because it could provide the services stated on the IEP.  (R at 121)

14.  The parent stated at the MDT meeting that her son wanted to remain at Merrit Educational Center, that the special resource room would have fewer

students than the regular classroom, and that she believed that the student would be able to learn to control his impulsive behavior, the source of his educational problems, through the counseling the school would provide him and by her and the student attending outside family counseling. (R at 121)

14.    The MDT team also discussed whether or not the student was eligible for extended school year services ("ESY") and determined that he was not. (R at 121)

15.    Missed services for the student were also discussed. The MDT team determined that any missed services did not cause any of the student's goals/objectives to not be met.

16.    The MDT team determined that the student has an attendance issue outside of times he served suspension and that it was his refusal to stay in class that impacted his progress. (R at 122)

                    Respectfully submitted,


                    PETER J. NICKLES
                    Interim Attorney General for the District of Columbia


                    GEORGE C. VALENTINE
                    Deputy Attorney General, Civil Litigation Division

                    /s/ Edward P. Taptich
                    EDWARD P. TAPTICH [012914]
                    Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

March 3, 2008

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DARLENE HINSON et al.,                    :
                                          :
      Plaintiffs,                         :
                                          :
        v.                               :    Civ. No. 07-0934(CKK)
                                          :
MERRIT EDUCATIONAL CENTER, et al.,        :
                                          :
      Defendants.                        :
_____:

## DEFENDANTS' RESPONSE TO PLAINTIFFS' "STATEMENT OF UNDISPUTED FACT."

      As noted in defendants' Opposition to plaintiffs' Motion for Summary Judgment, plaintiffs did not file a Statement of Undisputed Material Facts supported by any citation to the record.  (Opposition at 6-7)  Rather, plaintiffs merely copied allegations 7-17[6] and 23-24 of their Complaint and titled a paragraph in their Motion, "Undisputed Fact."  (Motion at 1)

      Because there is no reference to the record for any of these allegedly undisputed facts, defendants are unable, at this time, to oppose them with any reference to the record.

                  Respectfully submitted,


                  PETER J. NICKLES
                  Interim Attorney General for the District of Columbia


                  GEORGE C. VALENTINE
                  Deputy Attorney General, Civil Litigation Division

                  /s/ Edward P. Taptich
                  EDWARD P. TAPTICH [012914]
                  Chief, Equity, Section 2

---

[6] Plaintiffs changed the date from 2003 (in paragraph 9 of their Complaint) to 2005 (in their Motion).

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor South
Washington, DC 20001
(202) 442-9842
E-mail – maria.merkowitz@dc.gov

March 3, 2008