UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARLENE HINSON, as mother and next
friend of N.H., a minor child

    Plaintiff,

     v.

MERRITT EDUCATIONAL CENTER, *et
al.*,

    Defendants.

Civil Action No. 07-934 (CKK)

**MEMORANDUM OPINION**
(September 29, 2008)

Plaintiff Darlene Hinson, on behalf of her minor son, N.H., brings this action pursuant to the

Individuals with Disabilities Education Act ("IDEA") as amended, 20 U.S.C. § 1400 *et. seq.*,[1]

against Defendant, District of Columbia. The IDEA provides that all children with disabilities shall

receive a free and appropriate public education ("FAPE"), and creates procedural safeguards to

ensure that disabled children receive individualized education programs ("IEP") to fulfill the Act's

goals. *See id.* §§ 1412(a)(1)(A), 1414(d)(1)(A). A parent who objects to the identification,

evaluation, or educational placement of his or her child may seek a due process hearing before a

Hearing Officer, and if he or she remains dissatisfied, may file a lawsuit. *Id.* §§ 1415(f), (i). This

case comes to the Court on appeal from the April 25, 2007 Hearing Officer's Determination

---

[1]The statute was reauthorized and recodified pursuant to the Individuals with Disabilities
Education Improvement Act in 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004). The
amendments provide that the short title of the reauthorized and amended provisions remains the
Individuals with Disabilities Education Act. *See* Pub. L. 108-466, § 101, 118 Stat. at 2647; 20
U.S.C. § 1400 (2006) ("This chapter may be cited as the 'Individuals with Disabilities Education
Act.'"). Accordingly, the Court will cite to the amended act as the IDEA.

("HOD") and related proceedings.

Currently before the Court are Plaintiff's [18] Motion for Summary Judgment ("Pl.'s Mot.

Summ. J.") and Defendant's [16] Opposition to Plaintiff's Motion for Summary Judgment and

Cross-Motion for Summary Judgment ("Def.'s Opp'n").  After a thorough review of the Parties'

submissions, the administrative record, applicable case law and statutory authority, the Court shall

deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary

Judgment, for the reasons that follow.

## I: BACKGROUND

At the outset, the Court observes that the District Court for the District of Columbia has

supplemented Federal Rule of Civil Procedure 56 with LCvR 7(h), which requires that each party

submitting a motion for summary judgment attach a statement of material facts to which that party

contends there is no genuine issue, with specific citations to those portions of the record upon which

the party relies in fashioning the statement.  The party opposing such a motion must, in turn, submit

a statement of genuine issues enumerating all material facts which the party contends are at issue

and thus require litigation.  *See* LCvR 7(h). Where the opposing party fails to discharge this

obligation, a court may take all facts alleged by the movant as admitted.  *Id.*  As the Court of

Appeals for the District of Columbia Circuit has emphasized, "[LCvR 7(h)] places the burden on

the parties and their counsel, who are most familiar with the litigation and the record, to crystallize

for the district court the material facts and relevant portions of the record."  *Jackson v. Finnegan,

Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v.

Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988); *Guarino v. Brookfield Township Trustees*, 980 F.2d

399, 406 (6th Cir. 1992)).  Because of the significance of this task and the potential hardship placed

on the court if parties are derelict in their duty, courts require strict compliance with LCvR 7(h). *See Jackson,* 101 F.3d at 150 (citations omitted).

As the parties were advised before they filed their Motions for Summary Judgment, this Court strictly adheres to the text of Local Civil Rule 7(h) when resolving motions for summary judgment.  *See* 8/21/07 Order, Docket No. [8]; *see also Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002).  Although discretionary in the text of the Local Civil Rule 7(h), in resolving the present summary judgment motion, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).  The United States District Court for the District of Columbia has recently clarified that, for "cases in which judicial review is based solely on the administrative record . . . motions for summary judgment and oppositions thereto shall include a statement of facts with references to the administrative record." LCvR 7(h)(2).  Local Civil Rule 7(h)(2) does not alter the parties' obligations to submit statements of material fact in support of motions for summary judgment in administrative review cases.  Rather, as the Comment to Local Civil Rule 7(h) states, LCvR 7(h)(2) "recognizes that in cases where review is based on an administrative record the court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record." *See* Comment to LCvR 7(h).

In setting out the factual background, where possible, the Court cites to the parties' statements of facts filed in accordance with Local Civil Rule 7(h).[2]  The Court has reviewed the

_____

[2]Despite the Court's repeated admonishments that it strictly adheres to the text of the local rules when resolving motions for summary judgment, *see* 8/21/07 Order, Docket No. [8]; 3/10/08 Order, Docket No. [17], the Court notes that Plaintiff did not file a Response to

record citations by the Parties to ensure that the representations made in the Parties' statements are accurate, and notes that so-called "factual assertions" that are unsupported by citations to accurate record evidence are insufficient to create issues of material fact. The Court also cites directly to the record, if appropriate, to address facts not covered by the Parties in their statements of material facts. Moreover, the Court only uses the facts in a manner consistent with the approach taken by the Parties in their briefing and arguments made to the Court. *See, e.g.*, *Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647, 655 n.10 (D.C. Cir. 2003). Again the Court emphasizes—as it did in its March 10, 2008 Order striking Plaintiff's original Motion for Summary Judgment—that, in accordance with the Local Civil Rule, it "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

A.      *Events Occurring Prior to the April 25, 2007 Hearing Officer Determination*

N.H. is a thirteen-year old resident of the District of Columbia diagnosed with Attention-

---

Defendant's Statement of Material Facts, as required. Although Plaintiff, as ordered by the Court in its March 10, 2008 Order, revised her Motion for Summary Judgment to include a Statement of Material Facts ("Pl.'s Stmt."), Plaintiff failed to file a Response to Defendant's Statement of Material Facts as also required under LCvR 7(h). By contrast, Defendant filed a Statement of Material Facts ("Def.'s Stmt.") with its Motion for Summary Judgment, as well as a Response to Plaintiff's Statement ("Def.'s Resp."). Accordingly, where facts are covered by Plaintiff's Statement and Defendant's Response, the Court references them herein. Where, however, Defendant's factual assertions are not covered in Plaintiff's Statement–but are supported by record evidence–the Court accepts them as uncontroverted, in accordance with Local Civil Rule 7(h).

The Court further notes that both Plaintiff's and Defendant's Statement of Material Facts were filed, not as separate documents, but as part of their respective Motions for Summary Judgment and are paginated as part of the respective Motions. *See* Pl.'s Mot. Summ. J. at 1-3; Def.'s Mot. Summ. J. at 13-16. For clarity, the Court will cite to the appropriate paragraph in each Party's Statement, rather than the page in the Motion for Summary Judgment, when citing to either Party's statement of material facts.

Deficit Hyperactivity Disorder ("ADHD").  Pl.'s Stmt. ¶¶ 1-2, Def.'s Resp. ¶¶ 1-2; Administrative

Record ("A.R.") at 3, 110.  At the time of the HOD, N.H. was enrolled at the Merritt Educational

Center ("Merritt"), an open-space public school in the District of Columbia, for the 2006-2007

school year.  Pl.'s Stmt. ¶¶ 12 , 15; Def. Resp. ¶¶ 12, 15; Administrative Record ("A.R.") at 3.

### 1.    The January 23, 2007 MDT Meeting

On January 23, 2007, a Multi-Disciplinary Team ("MDT") Meeting was convened to

evaluate and determine N.H.'s eligibility for special education.  Def.'s Stmt. ¶ 5; A.R. at 106-10.

The participating members of the MDT present at the January 2007 meeting included: the student;

the student's mother; a special education teacher; a general education teacher; an occupational

therapist; a social worker; a speech therapist; a psychologist; and a representative from the Local

Education Agency ("LEA").  Def.'s Stmt. ¶ 6; A.R. at 108.  Plaintiff's attorney also participated in

the meeting by telephone.  Def.'s Stmt. ¶ 6; A.R. at 108.  In making its determination as to the type

of services the student required and where he should be placed, the MDT reviewed the following

evaluations: (1) a Neuropsychological Evaluation; (2) a Psycho-Educational Evaluation; (3) a

Speech and Language Evaluation; (4) an Occupational Therapy Evaluation; and (5) a Review of the

Neuropsychological Evaluation.  A.R. at 4.

The MDT was also presented with information concerning N.H.'s poor attendance and

academic record during the 2006-2007 school year.  A.R. at 109.  Specifically, N.H.'s general

education teacher stated that N.H. had previously been absent for forty-five days, from October 30,

2006 to January 18, 2007, and had not completed any assignments or homework in that teacher's

class.  *Id.*  Although Plaintiff's attorney contested whether all of N.H.'s absences during that period

were voluntary, raising the fact that N.H. had been suspended at some point during that time period,

the Hearing Officer found that at least *some* portion of N.H.'s absences during the period from

October 30, 2006 to January 18, 2007 were voluntary. *Id.* at 5. Nevertheless, regardless of the

reason for N.H.'s absences, it is undisputed that the members of the MDT were made aware—prior

to developing the IEP and deciding placement—that N.H. had been absent from school for a

substantial period of time and that his academic performance was suffering as a result. *See id.* at

109.

Based on the MDT's discussions, the proffered evaluations, and N.H.'s ADHD diagnosis,

the MDT determined that N.H. was eligible for special education services as an "other health

impaired" ("OHI") student and crafted an IEP for N.H. based on that determination. Pl.'s Stmt. ¶

11; Def.'s Resp. ¶ 11; Def.'s ¶ 9; A.R. at 3, 106-10, 120. In developing the IEP, the record reflects,

and Plaintiff does not dispute, that the MDT considered several alternatives, including keeping N.H.

in general education full time, placing N.H. in special instruction outside of general education full

time, or some combination of the two. A.R. at 106. Ultimately, the MDT decided that "current

documentation (and parent wishes) indicates that N.H. can assess the general education curriculum

in the special education resource room," and accordingly crafted an IEP that provided for a

combination of general education and special education services. Def.'s ¶¶ 9, 12; A.R. at 106-23.

Specifically, the IEP provided for fifteen hours per week of specialized instruction in reading,

written language and math, as well as thirty minutes per week for both psychological counseling

and speech therapy. Def.'s Stmt. ¶ 9; A.R. at 120. Plaintiff's attorney, who disagreed with the way

the math objective was written and felt that the IEP should require one hour of psychological

counseling per week rather than the thirty minutes provided, was the only member of the MDT to

disagree with the IEP. A.R. at 120-22. Plaintiff herself fully agreed with the substance of the IEP.

*Id.* at 120.  At the conclusion of the MDT Meeting, Plaintiff signed the approval line indicating that she agreed with the contents of the IEP.  *Id.* at 4, 111, 120.

At the January 23, 2007 Meeting, the MDT also considered the appropriate placement for implementation of N.H.'s IEP.  *See id.* at 120-22.  Although the record shows that Plaintiff initially expressed concerns that N.H. "can not make it" in the open-space environment at Merritt, *id.* at 109, Plaintiff ultimately concluded that Merritt, N.H.'s neighborhood school, was an appropriate placement for her son:  "After a description of the combination setting was given along with additional discussion of services that would be provided, [the Plaintiff] agreed to Merritt."  *Id.* at 121.  Indeed, by the end of the MDT Meeting, the record shows that Plaintiff was fully in favor of placement at Merritt, expressing concerns that if N.H. was placed at a different school, "his unacceptable behaviors will increase."  *Id.*  Although the Plaintiff's Attorney remained opposed to the placement at Merritt, Plaintiff herself agreed that Merritt could provide the services set forth in the IEP.  Def.'s Stmt. ¶¶ 13-14; A.R. at 120-22.  At the conclusion of the MDT Meeting, Plaintiff agreed to and signed the initial placement notice indicating agreement with the placement at Merritt. A.R. at 107, 111.

> ### 2.    *Plaintiff's February 8, 2007 Request For A Due Process Hearing*

On February 8, 2007—only sixteen days after Plaintiff had agreed to N.H.'s IEP and placement—Plaintiff filed a Due Process Hearing Request alleging that Defendant had failed to develop an appropriate IEP for N.H. and to provide N.H. with an appropriate educational placement.  Def.'s Stmt. ¶ 1; A.R. 14-18.  Plaintiff requested that N.H. be placed in a "therapeutic school," but did not provide any support for the request.  *Id.* at 16.

3.      *The March 6, 2007 Due Process Hearing*

A Due Process Hearing was initially convened on March 6, 2007.  Pl.'s Stmt. ¶ 27; Def's

Resp. ¶ 27; A.R. at 134-35; 4/12/07 Due Process Hearing Transcript ("DPH Tr.") at 4.[3]  At that

time, however, the Hearing Officer continued the matter so that the Parties could meet again to

review N.H.'s IEP and placement, and determine whether any revisions were appropriate.  Pl.'s

Stmt. ¶ 28; Def.'s Resp. ¶ 28; A.R. at 134-35; DPH Tr. at 4.

4.      *The April 10, 2007 MDT Meeting*

A MDT Meeting was subsequently convened on April 10, 2007.  A.R. 134-35.   Present at

the meeting were as follows: Plaintiff; Plaintiff's attorney; a special education teacher; a general

education teacher; a speech therapist; a social worker; a psychologist; and a LEA representative.

*Id.* at 134.  The record does not reflect, nor does Plaintiff suggest, that Plaintiff provided the MDT

with any new evaluations or other documentation that were not previously available to the MDT at

the January 23, 2007 meeting.  Rather, it appears from the record that the only new information

presented at the April 10, 2007 meeting concerned N.H.'s continued attendance problems and a

recent suspension.  *Id.*  Specifically, the MDT Meeting notes reflect that: (1) N.H.'s general

education teacher reported that N.H. had attended class only three times since she last met with

N.H.'s mother; and (2) N.H. had been accused of stealing another student's cell phone and

threatening to put the student's head in a toilet.  *Id.*  Moreover, all members of the MDT, with the

exception of Plaintiff and her attorney, believed that N.H.'s actions in stealing the other student's

_____

[3]The transcript from the 4/12/07 Due Process Hearing was included at page160 of the
Administrative Record.  The transcript, however, was not paginated as part of the Administrative
Record, but rather contains only its original pagination.  Accordingly, the Court shall cite to the
transcript by reference to the transcript's internal pagination.

cell phone were not a manifestation of his disability.  *Id.* at 137.  The members of the MDT,

excluding Plaintiff and her attorney, therefore concluded that the IEP and placement should not be

revised, reasoning that: "[N.H.] has not attempted to follow any of the schedules given him and

DCPS is unable to determine if a more restrictive environment is in fact needed."  *Id.* at 135.

>    B.    *The April 12, 2007 Due Process Hearing*

On April 12, 2007, the Due Process Hearing was reconvened.  Pl.'s Stmt. ¶ 26; Def.'s Resp.

¶ 26; A.R. at 160.  Despite having participated in and agreed with both the IEP and placemen t

decision-making process that occurred in January of 2007, Plaintiff's position at the Hearing was

that both the IEP and the placement were inappropriate.  DPH Tr. at 9.  Plaintiff, as the party

challenging the IEP, had the burden of proof to show that the plan was inappropriate.  *Schaffer v.*

*Weast*, 546 U.S. 49, 62 (2005).  Plaintiff, however, did not proffer any experts to testify at the

Hearing.  Indeed, the only witness who gave testimony at the Hearing was Plaintiff herself.  *See*

*generally* DPH Tr.  Moreover, Plaintiff did not provide the Hearing Officer with any additional

information or evidence, and consequently the Hearing Officer was presented with the very same

record previously provided to the MDT.  DPH Tr. at 10-15.  The following summarizes the issues

raised by Plaintiff at the Due Process Hearing, the responses raised by both Defendant and the

Hearing Officer, and the Hearing Officer's final conclusions as stated in the HOD issues on April

25, 2007.

>    1.    *The Appropriateness of the IEP*

As to the IEP, Plaintiff argued during the Due Process Hearing that the Plan was

inappropriate because she believed N.H. "should be in a therapeutic setting receiving full time

special education services."  DPH Tr.  at 9.  However, as the Hearing Officer observed both during

the Due Process Hearing and again in the HOD, the Plaintiff herself had only recently helped develop and agreed to N.H.'s IEP, which provided that N.H. should be out of a general education setting only on a part-time basis. *Id.* at 16-17; A.R. at 5. Plaintiff admitted in her testimony at the Due Process Hearing that she had attended and participated in the IEP meeting, DPH Tr. at 19, and that she signed the IEP indicating her agreement, *id.* at 21-22. Indeed, Plaintiff admitted she had participated in all MDT Meetings. DPH Tr. at 19-20. Plaintiff does not contest this in her pending Motion for Summary Judgment.

Plaintiff also failed to provide any evidence to the Hearing Officer, besides her own unsupported opinion, that N.H. required full time special education. As a result, the Hearing Officer noted to Plaintiff in the Hearing, "if you're talking about a full time special education which is what you're requesting, you have to have at least [*sic*] evaluations that indicate that they who are the subject matter experts desire or recommend that type of evaluation." *Id.* at 12. In response, Plaintiff stated that N.H.'s evaluations did recommend full time special education, and pointed the Hearing Officer to page five of the Psycho-Educational Evaluation (N.H. Hearing Exhibit 10) as her sole support for this claim. *Id.* at 12-17. Specifically, Plaintiff directed the Hearing Officer to the first of the five final recommendations proffered by the Evaluation, which stated: "Pending the results of a clinical evaluation, [N.H.] may benefit from education interventions using intensive one-on-one instruction and small groups in an environment suitable for a child who has learning issues complicated by emotional issues." *Id.* 12-17; A.R. at 90.

The Court notes that the evaluation which Plaintiff relied upon at the Hearing does not support a claim that full time special education was recommended. Rather, the evaluation states only that N.H. "may" benefit from the use of personal instruction and smaller groups, but does not

mandate such instruction nor state whether such instruction, if provided, should be conducted on a full time or part time basis.  Plaintiff did not direct the Hearing Officer to any other evaluation that would support her claim that N.H.'s evaluations recommended full time special education.  Based on the evidence Plaintiff presented at the Hearing, the Hearing Officer concluded in his decision that "none of the student's evaluations recommended a full-time placement and there was nothing in the record to support a full-time program, as the only testimony on this issue was the parent's testimony." A.R. at 5.  Overall, based upon Plaintiff's participation in the IEP process and her agreement to the IEP as well as the lack of any expert evaluations or other evidence supporting full time special education, the Hearing Officer concluded that Plaintiff had not met her burden of persuading the Hearing Officer that the January 23, 2007 IEP was inappropriate.  *Id.*

In so finding, the Hearing Officer rejected Plaintiff's argument that events between the time the IEP was agreed to on January 23rd and the time of the Due Process Hearing on April 12th demonstrated that the IEP was no longer appropriate.  Specifically, Plaintiff claimed that N.H. had been suspended a number of times during the intervening time period and had received failing marks in his classes, which Plaintiff inferred was evidence that N.H. required full time special education and that the IEP was therefore inappropriate.  DPH Tr. at 22, 30.  Once again Plaintiff did not provide any expert testimony or expert evaluations supporting either her belief that the suspensions and failing grades were caused by N.H.'s disability or her belief that the IEP was no longer appropriate.  For its part, Defendant countered that N.H.'s absences prevented him from receiving instruction and that the MDT had determined that the actions underlying N.H.'s suspensions were not a result of his disability.  *Id*. at 27-29.  The Court notes that there is an unresolved dispute as to the exact number of days N.H. was absent from class during the

intervening period and the reasons for those absences.  This issue, however, need not be resolved because, as discussed below, it is not material to the HOD or the Court's review of that HOD.  As the Hearing Officer emphasized, both parties agreed that "the student did not attend classes," and as a consequence of his failure to attend classes, "the student was unavailable for obtaining educational benefit."  *Id.*  Based on the fact that "the student was not availing himself of educational benefit, as the student was consistently absent or skipping classes," the Hearing Officer concluded that Plaintiff had failed to meet her burden of showing that the IEP was inappropriate.  *Id.*

2.      *The Appropriateness of the Placement*

Second, during the Due Process Hearing, Plaintiff argued that N.H.'s placement at Merritt was inappropriate.  The Hearing Officer again observed in the HOD that Plaintiff had only recently participated in and agreed with the determination that Merritt was an appropriate educational placement for N.H.  A.R. at 5.  Plaintiff, however, argued at the Hearing that she now believed her son "is not capable of function [*sic*] within an open-space classroom" and needs a more "structured" or "therapeutic setting."  A.R. at 4; DPH Tr. at 9.  Once again, Plaintiff did not present any expert evidence or evaluations to support her claim.  Instead, Plaintiff offered only her own unsupported opinion that Merritt was "not working for [N.H.]."  A.R.  at 22.  However, as the Hearing Officer concluded in the HOD, Plaintiff had never formally attended any of N.H.'s classrooms. A.R. at 3. Because Plaintiff had participated in the placement decision-making process and agreed to placement at Merritt, and because she had failed to provide any expert testimony or other evidence recommending a full-time placement or otherwise showing that placement at Merritt was inappropriate, the Hearing Officer concluded that Plaintiff had failed to show by a preponderance of the evidence that the placement at Merritt was inappropriate.  *Id*. at 5.

In so finding, the Hearing Officer again rejected Plaintiff's argument that events between the time the placement was agreed to on January 23rd and the time of the Hearing on April 12th demonstrated that the placement were no longer appropriate.  Plaintiff made the same arguments already set forth above, *see* supra 11-12, that N.H.'s absences and failing grades indicated the placement was inappropriate, but once again, Plaintiff did not provide any expert testimony or expert evaluations recommending that N.H.'s placement be altered.

C.    *Other Procedural History*

On May 21, 2007, Plaintiff filed her Complaint, in which she sought relief pursuant to the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. § 1400 *et. seq.*, as well as 42 U.S.C. §§ 1983 and 1985, Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*,[4] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and the Fifth Amendment to the Constitution of the United States.  Compl. ¶ 1.  Plaintiff named as Defendants to the action the District of Columbia, Merritt Educational Center, a public school in the District of Columbia, and District of Columbia Mayor Adrian Fenty (collectively "Defendants"). On June 14, 2007, Defendants moved for partial dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to state a claim under section 1983, section 1985, the Rehabilitation Act, the ADA, or the Fifth Amendment, and similarly failed to state a claim against any Defendant other than the District of Columbia.  On November 13, 2007, the Court granted Defendants' Motion for Partial Dismissal.  As a result, the Court dismissed Mayor Fenty and Merritt Educational Center as Defendants in this action, and also dismissed

---

[4] Plaintiffs' Complaint erroneously states that this action is brought pursuant to the ADA, 42 U.S.C. § 1231 *et seq.*  Compl. ¶ 1.  There does not appear to be any such section of chapter 42 of the United States Code.

Plaintiff's claims pursuant to Section 1983, Section 1985, the Rehabilitation Act, the ADA, and the Fifth Amendment.

On February 4, 2008, Plaintiff initially filed a Motion for Summary Judgment, but failed to include a Statement of Material Facts as required under local rules.  On March 3, 2008, Defendant filed its Opposition and Cross-Motion for Summary Judgment.  Defendant pointed out to the Court in its Opposition that Plaintiff's Motion for Summary Judgment had failed to include a Statement of Material Facts in compliance with Local Civil Rules 7(h) and 56.1.  Def.'s Opp'n 6-7.  The Court agreed, and issued an order on March 10, 2008 striking the Plaintiff's Motion for Summary Judgment and requiring Plaintiff to refile a revised Motion for Summary Judgment that included a properly prepared Statement of Material Facts.  3/10/08 Order.  In that same Order, the Court also required Defendant to respond to Plaintiff's Statement of Material Facts and file a revised Reply, if Defendant deemed it necessary.  On March 18, 2008, Plaintiff filed a revised Motion for Summary Judgment with the required Statement of Material Facts.  On March 24, 2008, Defendant filed its Response to Plaintiff's Statement of Material Facts, but declined to file a revised Reply.  Deadlines for both Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motions for Summary Judgment, as well as Defendant's Reply in Support of its Motion for Summary Judgment have passed, but none of these pleadings have been filed. However, as the sole issue presented in the Parties' Cross-Motions for Summary Judgment is whether the HOD is correct, the issues are sufficiently ripe for the Court's review and resolution.

## II: STATUTORY FRAMEWORK

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A).  "Implicit" in the IDEA's

guarantee "is the requirement that the education to which access is provided be sufficient to confer

some educational benefit upon the handicapped child."  *Bd. of Educ. of Hendrick Hudson Cent. Sch.*

*Dist., Westchester County v. Rowley*, 458 U.S. 176, 200 (1982)).

      As a condition of funding under the IDEA, the Act requires schools and other local

educational agencies to adopt procedures to ensure that "[a] free appropriate public education

("FAPE") is available to all children with disabilities residing in the State . . . ."  20 U.S.C. §

1412(a)(1)(A).  A FAPE is defined, under the IDEA, as "special education and related services that:

(A) have been provided at public expense, under public supervision and direction, and without

charge; (B) meet the standards of the State educational agency; (C) include an appropriate

preschool, elementary school, or secondary school education in the State involved; and (D) are

provided in conformity with the individualized education program required . . . ."  *Id.* § 1401(9).

      A student's eligibility for a FAPE under the IDEA is determined by the results of testing and

evaluating the student, and the findings of a MDT.  Such a team consists of the student's parents,

teachers, and other educational specialists, who meet and confer in a collaborative process to

determine how best to accommodate the needs of the student to provide a FAPE.  *See id.* §

1414(d)(1)(B).  Once a child is found to qualify for a FAPE, the government is required to develop

and implement an IEP for the student.  *Id.* § 1414(d)(2)(A).  The IEP must include a written

statement of the child's present academic level, the measurable annual goals for the child, the

necessary educational and related services the child is to receive, and the extent to which the child

will participate in a regular education classroom.  *See id.* § 1414(d)(1)(A).  Federal law also

requires that the IEP's be developed by an "IEP team," which consists of the child's parent(s),

regular and special education teachers, a representative of the school district, persons who can interpret the evaluation results, and the child, if appropriate.  *Id.* § 1414(d)(1)(B).

In order to implement the IEP, a team that includes the child's parent(s) determines where the child should be placed "based on the child's IEP."  34 C.F.R. § 300.116.  In determining the appropriate placement for a child, preference given to the least restrictive environment and the appropriate schools nearest the child's home.  *Id.; see also* 20 U.S.C. § 1412(a)(5).  Further, mainstreaming of children eligible for special education services under the IDEA is "'not only a laudable goal but is also a requirement of the Act.'"  *Roark v. District of Columbia*, 460 F. Supp.2d 32, 43 (D.D.C. 2006) (quoting *DeVries v. Fairfax County Sch. Bd.*, 882 F.2d 786, 878 (4th Cir. 1989)); *Rowley,* 458 U.S. at 201 ("The Act requires participating States to educate handicapped children with nonhandicapped children whenever possible.").  If no public school can accommodate the student's needs, the government is required to place the student in an appropriate private school and pay the tuition.  20 U.S.C. § 1412(a)(10)(B)(I); *see also Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985).

The IDEA also sets forth a process whereby a parent of a child with a disability who disagrees with any decision regarding placement or a manifestation determination may request a hearing.  *See* 20 U.S. C. § 1415(k)(3).  The Act provides that, whenever a complaint is received under section 1415(k), parents involved in the complaint are entitled to an impartial due process hearing, *see id.* § 1415(f)(1), at which they have a "right to be accompanied and advised by counsel," *id.* § 1415(h)(1).  A qualified impartial Hearing Officer conducts the due process hearing in accordance with the Act.  *Id.* § 1415(f)(3).  Parents "aggrieved by" a Hearing Officer's findings and decision may bring a civil action in either state or federal court.  *Id.* § 1415(i)(2)(A).  In that

situation, the district court has jurisdiction to receive the record of the administrative proceeding, to

hear additional evidence at the request of a party, and "basing its decision on the preponderance of

the evidence, [to] grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C).

### III: LEGAL STANDARDS

A.    *Summary Judgment*

In this case the Court is presented with cross motions for summary judgment. A party is

entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is

no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a

matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under

the summary judgment standard, the moving party bears the "initial responsibility of informing the

district court of the basis for [its] motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits which

[it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). In response, the opposing party must "go beyond the pleadings

and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file,

'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal

citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the

factual assertion must be capable of affecting the substantive outcome of the litigation; to be

genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-

fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).   "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

      B.     *The IDEA*

     In a district court's review of a HOD, the burden of proof is always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the Hearing Officer was wrong." *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).  In turn, "a court upsetting the officer's decision must at least explain its basis for doing so." *Id.*

     The Supreme Court has interpreted the "preponderance standard of review [applicable to district court review of a Hearing Officer Determination] not to be an allowance of unfettered *de novo* review." *Id.* (quoting *Rowley*, 458 U.S. at 206).  Courts must give administrative proceedings

"due weight," *id.*, and "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Id.* (quoting *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). Courts may not substitute their own views for those of the Hearing Officer. *See Rowley*, 458 U.S. at 206; *Shaw v. Dist. of Columbia*, 238 F.Supp.2d 127, 135 (D.D.C. 2002). However, the statute also suggests "less deference than is conventional in administrative proceedings," *Reid*, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. 20 U.S.C. § 1415(i)(2)(C)(ii). When, as here, no additional evidence is introduced in a civil suit seeking review of an HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. *Id.* § 1415(i)(2)(B); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005).

At the outset, the Court notes that Plaintiff's Motion for Summary Judgment fails to acknowledge that she, as the party challenging the HOD, bears the burden of proof to persuade the Court that the Hearing Officer was wrong. Plaintiff's Motion does not allege any errors in the HOD, but rather argues—without reference to the Hearing Officer or his determination—that Plaintiff should be awarded summary judgment because N.H.'s IEP and placement are inappropriate. Plaintiff's Motion therefore wrongly implies that this Court should apply a *de novo* standard of review to the HOD, rather than the preponderance standard of review applicable to district court review of a Hearing Officer Determination. Nonetheless, the Court reiterates that Plaintiff retains the "burden of persuading the court that the Hearing Officer was wrong." *Reid*, 401 F.3d at 521.

## IV: DISCUSSION

Plaintiff's Motion for Summary Judgment makes three principal arguments: (1) that

Defendant failed to timely identify and evaluate N.H. as required under the IDEA and local regulations, Pl.'s Mot. Summ. J. at 4; (2) that Defendant failed to provide an appropriate IEP tailored to meet N.H.'s unique needs as required under the IDEA, *id.* at 5-6; and (3) that Defendant failed to provide N.H. with an appropriate placement as required under the IDEA, *id.* at 6-7.  By contrast, in its Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion, Defendant responds: (1) to the extent Plaintiff claims Defendant failed to timely perform certain evaluations and convene a MDT Meeting, these issues were not presented to the Hearing Officer and therefore cannot be raised for the first time in this Court, Def.'s Opp'n at 8-9; and (2) both the IEP and placement are reasonably calculated to enable the student to receive educational benefits and are therefore appropriate under the IDEA, *id.* at 9-12.  The Court will first address Plaintiff's allegations regarding Defendant's delay in identifying and evaluating N.H. and Defendant's response, before turning to Plaintiff's substantive challenges to the appropriateness of the IEP and placement, and Defendant's responses and counter-arguments.

        A.       *Failure to Timely Identify and Evaluate N.H.*

Plaintiff begins her Motion for Summary Judgment by arguing that Defendant failed to timely identify and evaluate N.H. in violation of both the IDEA and local regulations.  Pl.'s Mot. Summ. J. at 4.  Specifically, Plaintiff alleges that "Defendant's failure to identify and find NH eligible for service until January 23, 200[7] is a denial of free appropriate public education."  *Id.* at 4.  Defendant responds that, to the extent Plaintiff alleges Defendant wrongfully delayed in performing evaluations of N.H. or in convening a MDT meeting, these issues were neither raised in Plaintiff's Due Process Complaint nor at the April 12, 2007 Due Process Hearing.  Def.'s Mot. Summ. J. at 8.  Accordingly, Defendant argues that because these issues were not presented before

the Hearing Officer, this Court may not take up these issues now. *Id.*

The Court agrees that these allegations were neither raised in Plaintiff's Due Process Complaint nor in the April 12, 2007 Due Process Hearing. Because these allegations were never presented to the Hearing Officer, Plaintiff may not raise them for the first time in this Court. *Roark*, 460 F. Supp.2d at 43; *Shaw*, 238 F.Supp.2d at 140 (citing *Cox v. Jenkins*, 878 F.2d 414, 420 (D.C. Cir. 1989)). Absent either "allegation(s) that an attempt was made to raise this issue before the hearing officer [who] declined to consider it" or "a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the IDEA before seeking judicial review under the Act." *Id.* Accordingly, this Court will not consider whether Defendant delayed in evaluating N.H. and in convening a MDT Meeting in violation of the IDEA and local regulations because the Hearing Officer did not have the opportunity to examine this issue in the first instance. Plaintiff has not offered, nor does the review of the record provide, any indication that the Court should hear the matter now.

B.      *The Appropriateness of the IEP*

Under the IDEA, a student's IEP must be "reasonably calculated to enable the child to receive educational benefits." *Rowley,* 458 U.S. at 206-07. Plaintiff challenges that N.H.'s IEP does not provide "appropriate services" tailored to his needs. Pl.'s Mot. Summ. J. at 5. The Court finds that Plaintiff has failed to meet her burden of persuading the Court that the Hearing Officer's Determination finding the IEP appropriate was wrong.

In enacting the IDEA, "Congress sought to protect individual children by providing for parental involvement in . . . the formulation of the child's individual educational program." *Rowley*, 458 U.S. at 208. Congress' emphasis on the full participation of the parent(s) in the IEP process

"demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Id.* at 206. Here, Plaintiff fully participated in her son's IEP development process. She attended and participated in the January 23, 2007 MDT Meeting crafting her son's IEP, as well as the April 10, 2007 MDT Meeting. Def.'s Stmt. ¶ 6; A.R. at 108, 134. She admitted in her testimony at the Due Process Hearing that she had participated in all MDT Meetings. DPH Tr. at 19-20. And, not only did she participate in the process, but she also fully agreed with the substance of the IEP as drafted at the January 2007 meeting and signed the IEP indicating her agreement. A.R. at 4, 111, 120.

Plaintiff now challenges the very same IEP she helped craft. She fails, however, to provide any evidence—other than her own unsubstantiated beliefs—that the IEP is inappropriate.[5] Plaintiff has not proffered a single expert evaluation or opinion supporting her claim that N.H. requires full time special education or that the IEP is otherwise inappropriate. Nor has she directed the Court to any citation in the record that actually supports such a claim. Rather, Plaintiff proffers only her conclusory opinion that the IEP is not appropriately tailored to address "N.H.'s deficits in expressive and receptive language [which] impact[] NH's ability to access the general curriculum."

---

[5]The Court notes that Plaintiff's own unsubstantiated beliefs amount to nothing more than hearsay, self-serving statements and speculation, and are insufficient as such to defeat summary judgment. *See, e.g., Hastie v. Potter*, Civ. No. 00-5423, 2001 WL 793715, at *1 (D.D.C. June 28, 2001) (finding no genuine issue of material fact where the sole evidence plaintiff provided was "her own self-serving and conclusory statement"); *Saunders v. DiMario*, Civ. No. 97-1002, 1998 WL 525798, at *4 (D.D.C. Aug. 14, 1998) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext.").

Pl.'s Mot. Summ. J. at 5.[6]  In the absence of any such evidence, this Court cannot "substitute [its]

own notions of sound educational policy for those of the school authorities which they review."

*Rowley*, 458 U.S at 206.

Finally, Plaintiff alleges that N.H.'s poor academic results show that the IEP is

inappropriate.  Specifically, Plaintiff claims that "N.H. has [*sic*] F in all his classes" and is

performing below his grade level in reading and math.  Pl.'s Mot. Summ. J. at 6; Pl.'s Stmt. ¶¶ 18,

21.  Defendant disputes these factual assertions.  Def.'s Resp. at ¶¶ 18, 21.  The Court need not

resolve this dispute because, even assuming Plaintiff is correct, evidence that N.H. is not

performing well in school does not, in these circumstances, indicate that the IEP is inappropriate.

Although passing marks are "one important factor in determining educational benefit," *Rowley,* 458

U.S. at 207, they are not by themselves dispositive, *see Sherman v. Mamaronceck,* 340 F.3d 87, 93-

94 (2d Cir. 2003).  Rather, "failing grades must be viewed in the light of the evidence as a whole."

*Id.* at 94.

---

[6]Although Plaintiff, in her Motion for Summary Judgment, states that "N.H. was diagnosed with ADHD, learning disability, and mood and conduct disorder," Pl.'s Mot. Summ. J. at 5; Pl.s' Stmt. ¶ 2, Defendant disputes that N.H. was diagnosed with either a learning disability or mood and conduct disorder, Def.'s Resp. ¶ 2.  The Court further notes that, as the Hearing Officer found, the IEP classifies N.H. as Other Health Impaired only.  A.R. at 3.  While this suggests a factual dispute, because Plaintiff has not challenged the IEP as inappropriate based on its failure to include a learning disability or mood and conduct disorder diagnosis, the Court need not resolve this dispute.

Plaintiff also appears to contend that a teacher refused to permit N.H. to be pulled from a general education classroom to attend some portion of the IEP's recommended special instruction, which Plaintiff alleges is further evidence that appropriate services are not being provided.  *See* Pl.'s Mot. Summ. J. at 5 (citing A.R. at 45).  The record suggests that "this issue [was] resolved in a private meeting" between the principal and the teacher, A.R. at 45, but the Court cannot determine on the record before it whether N.H. was in fact denied access to special instruction required under his IEP.  Regardless, because the record shows that Plaintiff did not present this issue to the Hearing Officer, she may not present it to this Court for the first time, for the reasons discussed above.  *See supra* 21-22.

Here, there is evidence that the student has been absent from school for substantial periods of time. Although the Parties disagree on whether all of the student's absences were voluntary, the Hearing Officer found that both Plaintiff and Defendant agree that "the student did not attend classes." A.R. at 5. In light of N.H.'s extensive absences throughout the school year and giving proper deference to the Hearing Officer's Determination, Plaintiff has not shown that the student's poor academic performance resulted from a lack of appropriate services rather than the student's own extended absences. The Hearing Officer's conclusion that N.H. was not "availing himself of educational benefit" under these circumstances was a reasonable determination. Indeed, it is difficult to say how the Hearing Officer could have determined that the services in the IEP were not working when the student had not yet taken advantage of those services.

Accordingly, this Court finds that Plaintiff has failed to show that the Hearing Officer was wrong in concluding that the IEP was appropriate. To the extent that Plaintiff alleges the IEP was inappropriate at the time it was drafted in January 2007, the Court finds that Plaintiff participated in the process and agreed to the IEP at the time it was developed. To the extent that Plaintiff alleges that the IEP is currently inappropriate, the Court finds that Plaintiff has failed to provide any evidence, other than her unsupported opinion, supporting her claim that the services provided in the Plan are not tailored to N.H.'s needs.

2.     *The Appropriateness of Placement*

Once an IEP is developed, the government must also ensure that the student is provided an appropriate placement "based on the child's IEP." 34 C.F.R. § 300.116. Plaintiff's Motion for Summary Judgment challenges N.H.'s placement at Merritt as inappropriate. Pl.'s Mot. Summ. J. at 6-7. The Court finds that Plaintiff has failed to meet her burden of persuading the Court that the

Hearing Officer wrongly concluded N.H.'s placement was appropriate.

Once again, the Court notes that Plaintiff fully participated in the IEP and placement decision-making process. As she admitted in her testimony at the Due Process Hearing, she participated in all MDT Meetings. DPH Tr. at 19-20. And, not only did she participate in the process, but she fully agreed with the placement at Merritt at the time placement was issued in January 2007 and signed the placement notice indicating her approval. Def.'s Stmt. ¶¶ 13-14; A.R. at 107, 111, 120-22. Indeed, despite initial concerns, Plaintiff ultimately urged the MDT to place N.H. at Merritt, expressing concerns that N.H.'s "unacceptable behaviors will increase" if N.H. was placed at a different school." A.R. at 121.

Plaintiff now challenges placement at Merrit. She fails, however, to provide any evidence—other than her own unsubstantiated opinion—that placement at Merritt is inappropriate.[7] She has not proffered a single expert evaluation or opinion supporting her claim that Merritt is an inappropriate placement. Nor has she directed the Court to any citation in the record supporting such a claim. Although Plaintiff states that N.H. "requires a smaller structure [*sic*] environment to accommodate his disability," Pl.'s Mot. Summ. J. at 6, she has not shown that Merritt cannot provide such a smaller, more structured environment.[8] This lack of evidence is particularly

---

[7]The Court again emphasizes that such self-serving statements amount to nothing more than hearsay and speculation and are insufficient to defeat summary judgment. *See supra* 23 n. 5.

[8]The Court also notes that this citation in Plaintiff's Motion is from an evaluation provided to the MDT as part of the IEP development process. *See* Pl.'s Mot. Summ. J. (citing A.R. at 118). When considered in the context in which it was made, a more reasonable interpretation of this language is that the MDT concluded that Merritt can provide this "smaller structure environment" through the fifteen hours of specialized instruction provided for weekly under the IEP. *See* A.R. at 118. Regardless, Plaintiff offers no evidence to support her baseless conclusion that this lone statement recommends or requires removing N.H. from Merritt and

troublesome given that Plaintiff asks to remove N.H. from a neighborhood school that offers

mainstreaming opportunities, qualities that the IDEA values in determining appropriate placement.

34 C.F.R. § 300.116.; 20 U.S.C. § 1412(a)(5); *see also Rowley,* 458 U.S. at 201.

Finally, the Court notes that Plaintiff's argument against placement at Merritt has more to do

with Plaintiff's disapproval of the IEP than with the actual appropriateness of the placement at

Merritt.  Plaintiff argues that Merritt is an inappropriate placement because it cannot provide the

structured setting that Plaintiff believes is appropriate for N.H.  Pl.'s Mot. Summ. J. at 6.  But such

an argument is based on the presumption that N.H. requires a full time special education in a

therapeutic setting, *i.e.,* that the IEP as currently written is inappropriate.  The Court, however,

already rejected Plaintiff's argument that the IEP is inappropriate.  Therefore, to show that

placement is inappropriate, Plaintiff must show that Merritt is unable to implement the IEP *as

written*.  Plaintiff, however, has not provided any argument that Merritt cannot appropriately

implement N.H.'s current IEP.  The IDEA guarantees each child a free and appropriate

education—not an education that is "'designed according to a parent's desires.'"  *Roark,* 460 F.

Supp.2d at 45 (quoting *Shaw,* 238 F. Supp. at 139).  Although Plaintiff may prefer her son be placed

in a school that offers full time specialized care, her son's IEP does not currently recommend full

time specialized care, and she has not shown that Merritt cannot provide the combination of general

and special education that is provided for in N.H.'s current IEP.

Accordingly, this Court finds that Plaintiff has failed to show that the Hearing Officer was

wrong in concluding that placement at Merritt was appropriate.  To the extent that Plaintiff alleges

the placement was inappropriate at the time it was noticed in January 2007, the Court finds that

---

placing him into a full time therapeutic environment of his mother's choosing.

Plaintiff participated in the process and agreed to the placement at the time it was developed.  To

the extent that Plaintiff alleges that the placement is currently inappropriate, the Court finds that

Plaintiff has failed to provide any evidence that Merritt cannot implement N.H.'s current IEP.  The

Court therefore finds that Plaintiff has failed to establish any error in the April 25, 2007 HOD.

Because the sole issue presented in this case was whether the HOD was correct and because

Plaintiff has failed to show any error in the HOD, the Court shall grant Defendant's Motion for

Summary Judgment on Plaintiff's claims pursuant to the IDEA.

## IV:  CONCLUSION

For the foregoing reasons, the Court shall DENY Plaintiff's [18] Motion for Summary

Judgment, shall GRANT Defendant's [16] Motion for Summary Judgment, and shall dismiss this

case in its entirety.  An appropriate Order accompanies this Memorandum Opinion.


Date:   September 29, 2008



    /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge